# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| BELMORA LLC,<br>      *Plaintiff,*<br>v.<br><br>MIDWAY IMPORTING, INC.,<br>      *Defendant.* | Civil Action No. 1:18-cv-599<br>Hon. Liam O'Grady |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction (Dkt. 6). The Court considered the pleadings and the record in the case, and determined that oral argument would not assist its resolution of the matter.

### I. BACKGROUND

Plaintiff Belmora LLC ("Belmora") is a pharmaceutical company incorporated in Virginia, selling over-the-counter health care products. Dkt. 12 at 4. Defendant Midway Importing, Inc. ("Midway") is a Texas company which purchased products from Belmora. Dkt. 6 at 1. On April 6, 2018, Belmora commenced a civil action in Virginia Circuit Court against Midway, asserting breach of contract and unjust enrichment due to Midway's failure to pay for certain purchases between January 18, 2018 and February 12, 2018. *See* Dkt. 1 at 2–10. Belmora seeks $580,932.26 in damages. *Id.* at 12.

On May 18, 2018, Midway removed the case to this Court and subsequently filed this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), asserting lack of personal jurisdiction.

1

## II. LEGAL STANDARD

Under Rule 12(b)(2), a plaintiff bears the burden to demonstrate personal jurisdiction at every stage when there is a proper jurisdictional challenge. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff's burden of proof varies based on the posture of the case and the evidence presented to the court at that point. *See id.* at 268. When the court is "reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," a *prima facie* showing of personal jurisdiction is sufficient to survive the jurisdictional challenge. *See id.* The allegations and available evidence relating to personal jurisdiction must be viewed in the light most favorable to the plaintiff. *Id.*[1]

## III. ANALYSIS

A federal court has personal jurisdiction over a non-resident defendant if the forum state's long-arm statute authorizes the exercise of personal jurisdiction and the assertion of that jurisdiction is constitutional under the Due Process Clause. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016). In Virginia, the statutory inquiry merges with the constitutional inquiry because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the Constitution. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Thus, to be subject to personal jurisdiction in Virginia, the defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The plaintiff must demonstrate the defendant's purposeful availment of the forum such that the defendant should have reasonably anticipated being haled into court in the forum state. *Perdue Foods LLC*, 814 F.3d at 189. Physical presence in the forum is not

---

[1] The plaintiff's ultimate burden is to establish personal jurisdiction by preponderance of the evidence. *Id.*

2

required, but the contacts must be substantial and not "random, fortuitous, or attenuated." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal citations omitted); *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998).

When synthesizing these requirements for specific personal jurisdiction, courts consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278.

### a. Purposeful Availment

The first prong requires non-mechanical consideration of various factors regarding the quality and nature of the defendant's contacts with the forum. *See Perdue Foods LLC*, 814 F.3d at 189. Courts consider whether the defendant maintains offices or agents in the forum state, owns property in the forum state, reached into the forum state to solicit or initiate business, deliberately engaged in significant or long-term business activities in the forum state, or made in-person contact with the resident of the forum in the forum state regarding the business relationship. *Id.*

Courts also consider whether the parties contractually agreed that the law of the forum state would govern disputes, whether the performance of contractual duties was to occur within the forum, and the nature, quality and extent of the parties' communications about the business being transacted. *Id.*; *see also Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856 (E.D. Va. 2000); *Affinity Memory*, 20 F. Supp. 2d at 952 (listing the relevant factors as the place of contracting and negotiations, the initiator of the contract, the extent of the communications, and

3

the place of contractual performance). No single factor is dispositive. *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F. Supp. 423, 426 (E.D. Va. 1991) *aff'd*, 961 F.2d 489 (4th Cir. 1992).

As to this first prong of the jurisdictional analysis, certain factors weigh against finding jurisdiction: Midway does not have an office in Virginia, Midway communicated with Belmora regarding the purchase orders from Texas, and the goods at issue were not shipped to or from Virginia. Dkt. 6-1 at 6-7. However, the balance of factors weighs in favor of finding that Midway has sufficient minimum contacts with the Commonwealth of Virginia.

Importantly, Midway initiated the business transactions by sending purchase orders to Belmora in Virginia. *See* Dkt. 1-1 at ¶¶ 6, 12, 18, 34, 40, 46, 52, 58, 64, 70, 76, 82, 90. Midway sent the purchase orders to Belmora to obtain Belmora's goods, and through the purchase orders obligated itself to send payments to Belmora in Virginia. *See id.*; *Delta-T Corp. v. Pacific Ethanol, Inc.*, No. 3:08-cv-524, 2009 WL 77869, at *4 (E.D. Va. Jan. 7, 2009). Thus, although the shipments at issue were sent to and from states other than Virginia, Belmora received the purchase orders in Virginia and made arrangements for shipment of the requested goods from its Virginia office (and Midway was aware of this arrangement).

Midway asserts that the purchase orders were stand-alone transactions, and that a contract alone is insufficient to give rise to jurisdiction. Dkt. 6-1 at 7; *Goldman*, 337 F. Supp. 2d at 793 ("[I]t is clear that merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction in the resident's forum unless some substantial part of contractual formation or performance occurs in Virginia."). Midway asks the Court to focus only the purchase orders giving rise to this claim, and not on Midway's separate distribution business in Virginia. *See* Dkt. 18 at 2 ("[T]he geographic scope of Midway's

distribution business is unrelated to the discrete transactions that form the basis for the alleged breach. In other words, the instant claims do not 'arise out of' Midway's distribution activities."). Midway also seeks to exclude consideration of its Virginia sales representative because he did not participate in the purchase orders at issue. *Id.* at 10.

Putting aside the question of whether this is an appropriate limitation on the Court's inquiry, even if the Court focuses only on the purchase orders at issue in this case, and not the historical relationship between the parties,[2] the purchase orders show that Midway has engaged in significant business activities in Virginia. The fourteen purchase orders span a two-month period, and the amount at issue is nearly $600,000. *See Delta-T Corp.*, 2009 WL 77869, at *3 ("It is well established that even one act of transacting business will suffice."). There is no dispute that Midway engaged in frequent communications with Belmora's representatives in Virginia concerning the purchase orders at issue. Midway does not deny that these communications took place, arguing only that its representative was based in Texas and never came to Virginia to negotiate the purchase orders at issue. Dkt. 6-1 at 6-7. However, physical presence is not necessary for a finding of jurisdiction. *Production Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004) ("It is equally clear . . . that actual physical presence in the Commonwealth by the defendant is not required.").

The Court is unaware of an agreement between the parties as to which state's law would govern any dispute arising from the purchase orders. Additionally, the parties dispute where the contract was executed and where performance took place.[3] But the Court need not reach a

---

[2] Belmora asserts that the parties' business relationship extends back to 2009, and comprises millions of dollars' worth of business (with payments sent to Belmora's bank in Virginia). *See* Dkt. 12 at 1. Midway disputes that this full relationship can be considered as part of the Court's assessment of specific jurisdiction. As noted above, the Court need not look beyond the purchase orders at issue in this case to find that Midway is subject to the Court's jurisdiction.

[3] Belmora argues that the contracts were completed in Virginia where Belmora accepted Midway's offer by agreeing to fulfill the purchase orders, and that performance took place in Virginia where Belmora arranged for the shipment

5

determination as to the place of execution and performance of the contracts at this stage, because the other factors weigh in favor of finding that minimum contacts exist, as described above. *See Raymond*, 761 F. Supp. at 426 ("[I]n actions arising out of a contract dispute, the place of contract formation and performance is relevant but not dispositive.").

### b. Claims Arise Out of Activities Connected to the State

Belmora's claims (regarding Midway's failure to pay for goods) arise from the activities Midway directed at Virginia (the purchase orders Midway sent to Belmora in Virginia). *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

### c. Constitutional Reasonableness

Finally, exercise of personal jurisdiction would be constitutionally reasonable. When evaluating the constitutional reasonableness of subjecting a defendant to the jurisdiction of the forum, courts consider "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs Corp.*, 561 F.3d at 279.

Here, litigating in Virginia would create a limited burden for Midway, which has a sales representative in Virginia and has conducted extensive business here. Additionally, Virginia has an interest in protecting its companies from breach of contract situations such as the case before the Court. In consideration of these and the other factors listed above, the Court finds that exercise of jurisdiction over Midway is constitutionally reasonable.

---

of goods. Midway argues that any contract was "accepted" in the state from which the goods were shipped, and that performance took place in the state of shipment. As to the execution of the contract, Belmora appears to correctly interpret the law. *See Kraft Foods N. Am., Inc. v. Banner Engineering & Sales, Inc.*, 446 F. Supp. 2d 551, 569 (E.D. Va. 2006) (noting that as a general rule, the submission of a purchase order by a prospective buyer is viewed as an offer which may then be accepted or rejected by a seller).

## IV. CONCLUSION

For these reasons, and for good cause shown, Defendant Midway's Motion to Dismiss (Dkt. 6) is **DENIED**. The Court finds that Belmora has made a *prima facie* showing that Midway is subject to the jurisdiction of this Court. Should Midway have good cause to do so, it may raise the jurisdictional challenge again at a later date.

It is **SO ORDERED**.

July 2\_, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge